# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

METROPOLITAN ALLOYS CORPORATION,

        Plaintiff,

                                  Case No. 06-12667

v.                                    Hon. Gerald E. Rosen

CONSIDAR METAL MARKETING, INC.,

        Defendant.

_____/

## OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    September 25, 2007

PRESENT:  Honorable Gerald E. Rosen
                      United States District Judge

## I.  INTRODUCTION

Plaintiff Metropolitan Alloys Corporation, a Michigan manufacturer of zinc-based

alloys, commenced this action in this Court on June 16, 2006, asserting claims of fraud,

breach of contract, and breach of an implied covenant of good faith and fair dealing

against Defendant Considar Metal Marketing, Inc., a Canadian marketer and distributor of

Special High Grade ("SHG") zinc.  Plaintiff's claims arise out of Defendant's repudiation

of an alleged oral contract binding Defendant to sell SHG zinc to Plaintiff.  The Court's

subject matter jurisdiction rests upon the diverse citizenship of the Plaintiff corporation,

which is incorporated and has its principal place of business in Michigan, and the

Defendant corporation, which is organized under the laws of Canada and has its principal place of business in Toronto, Ontario.  <u>See</u> 28 U.S.C. § 1332(a)(2).

In lieu of answering the complaint, Defendant has filed a motion to dismiss each of Plaintiff's claims.  Through this motion, Defendant argues that Plaintiff's complaint is legally insufficient to sustain a claim for relief because (i) Plaintiff's fraud claim is impermissibly based on a promise of future action, and also is barred by the economic loss doctrine, (ii) Plaintiff's breach of contract claim is barred by the statute of frauds, and (iii) Michigan law does not recognize an independent claim for breach of an implied covenant of good faith and fair dealing.  In response, Plaintiff contends that its allegations are sufficient to withstand each of the legal challenges advanced in Defendant's motion.  Following this response, Defendant has filed a reply brief in further support of its motion.[1]

Having reviewed the parties' written submissions in support of and opposition to Defendant's motion, the accompanying exhibits, and the record as a whole, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of Defendant's motions.  Accordingly, the Court will decide this motion "on the briefs."  <u>See</u> Local Rule

---

[1]Plaintiff has filed an "objection" to this reply brief, asserting that it was filed outside the seven-day limit established by Local Rule 7.1(d)(1)(C) of this District.  As Defendant points out in response, however, Plaintiff has failed to properly calculate the true length of this seven-day period in accordance with Fed. R. Civ. P. 6 and Local Rule 6.1 of this District.  Having independently performed this computation, the Court is satisfied that Defendant's brief was timely filed, and that Plaintiff's objection is without merit.

7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings.

## II. FACTUAL BACKGROUND

Defendant's motion rests almost exclusively upon the allegations of Plaintiff's complaint.[2] Accordingly, the following recitation of facts derives solely from this source, with Plaintiff's allegations accepted as true for present purposes.

Plaintiff manufactures zinc-based alloys for the die-casting industry and zinc-based anodes for steel mills and the plating industry. (Complaint at ¶ 8.) Defendant markets and distributes "Special High Grade" ("SHG") zinc throughout the United States and Canada. (Id. at ¶ 9.)

On or around June 16, 2004, Defendant's sales manager, Joanne Felkers, and its marketing director, Graham White, met with Plaintiff's president, Murray Spilman, at Plaintiff's offices in Detroit, Michigan. (Id. at ¶ 10.) During the meeting, Ms. Felkers and Mr. White informed Mr. Spilman of their interest in supplying Plaintiff with SHG zinc. (Id.) Approximately nine months later, Mr. Spilman again met with Ms. Felkers and Mr. White at an industry meeting in Las Vegas, Nevada. (Id. at ¶ 11.) During this second meeting, Ms. Felkers and Mr. White reasserted their interest in supplying Plaintiff, and additionally "represented that Defendant had sufficient supply of SHG Zinc available

---

[2]The sole exception is Defendant's submission of two affidavits accompanying its reply brief. As indicated below, the Court finds that these affidavits contribute nothing to the proper resolution of Defendant's motion.

to supply a substantial portion of Plaintiff's requirements." (Id.)

Some time later, one of Plaintiff's customers requested a price quote for zinc-based alloys, seeking a price that would be linked to a ten-week average of the cash price on the London Metal Exchange. (Id. at ¶ 12.) On or about April 15, 2005, Mr. Spilman notified Ms. Felkers via telephone of this request. (Id.) Defendant, by and through Ms. Felkers, orally offered to supply 200-400 metric tons of SHG zinc to Plaintiff each month for the period of January through September of 2006, with the specific monthly quantity to be determined by Plaintiff. (Id.) Defendant further agreed to price the zinc in accordance with the formula sought by Plaintiff's customer. (Id.) Plaintiff, by and through Mr. Spilman, orally accepted Defendant's offer, subject to Plaintiff's receipt of an order from its customer. (Id.) So far as may be discerned from the complaint, the terms of the parties' agreement were never captured in a signed writing, nor did Plaintiff ever send written confirmation of its acceptance of Defendant's offer.

On or around April 29, 2005, Plaintiff submitted a bid to its customer, based on Defendant's commitment to supply SHG zinc in accordance with its agreement with Plaintiff. (Id. at ¶ 13.) In mid-May of 2005, Plaintiff's customer placed an order, triggering the oral contract with Defendant. (Id. at ¶ 14.) Plaintiff immediately notified Defendant of this order, and Defendant confirmed its promise to provide sufficient SHG zinc to enable Plaintiff to meet its customer's requirements. (Id.) In the course of subsequent discussions extending into early July of 2005, Ms. Felkers assured Mr. Spilman that she was preparing documentation to confirm the parties' agreement, and that

this confirmation would be sent shortly. (Id. at ¶¶ 15-16.) Plaintiff, however, never received any such documents. (Id. at ¶ 16.)

On or about July 27, 2005, Defendant notified Plaintiff that it would not honor the parties' oral agreement, citing a change in market conditions in light of substantially increased SHG zinc premiums. (Id. at ¶ 17.) In notifying Plaintiff of this development, Ms. Felkers stated that she was "shocked and surprised but that it was out of her control." (Id.) In order to meet its customer's demands, Plaintiff has been forced to purchase SHG zinc elsewhere at prices above those called for in the oral agreement with Defendant. (Id. at ¶ 18.)

Based on these allegations, Plaintiff commenced the present action in this Court, asserting state-law claims of fraud, breach of contract, and breach of an implied covenant of good faith and fair dealing. Through the present motion, Defendant seeks the dismissal of all three of these claims, contending that they are legally insufficient in one or more respects.

## III. ANALYSIS

### A. The Standards Governing Defendant's Motion

Defendant has brought the present motion under Fed. R. Civ. P. 12(b)(6).[3] When

---

[3]In the alternative, Defendant seeks an award of summary judgment under Fed. R. Civ. P. 56. Yet, the various legal challenges advanced in Defendant's motion rest entirely upon Plaintiff's complaint alone, and neither the motion nor the accompanying brief refer to any materials outside the pleadings. While Defendant has attached two affidavits to its reply brief, the Court explains below that these affidavits may not be considered at this juncture. Thus, the Court will treat Defendant's motion as brought exclusively under Rule 12(b)(6).

considering a motion to dismiss under this Rule for failure to state a claim upon which relief can be granted, the Court is required to accept as true the well-pleaded factual allegations set forth in Plaintiff's complaint.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences."  Morgan, 829 F.2d at 12.  The Court will apply these standards in resolving Defendant's motion.

**B.**     **Plaintiff's Fraud Claim Survives the Bar Against Claims Based upon a Promise of Future Action, Where Plaintiff Has Sufficiently Alleged Defendant's Contemporaneous Intent Not to Fulfill Its Promise.**

In support of the claim of fraud asserted in the first count of its complaint, Plaintiff alleges that Defendant represented during its negotiations with Plaintiff that it "had sufficient resources to deliver the SHG Zinc" needed by Plaintiff to meet its customer's demands.  (Complaint at ¶ 21).  Plaintiff further alleges that these representations "were false, deceptive, and intentionally misleading when made since Defendant, contrary to said representations, did not have the resources to deliver the SHG Zinc" that it had promised to Plaintiff.  (Id.)  In its motion, Defendant argues that this claim impermissibly rests upon a promise of future performance, which ordinarily cannot sustain a fraud claim under Michigan law.[4]  Plaintiff, however, maintains that its allegations fit within an exception to this general rule, under which a promise of future action may support a claim

---

[4]Both parties assume that Michigan law governs their dispute, and the Court proceeds in accordance with this assumption in resolving Defendant's motion.

6

of fraud if accompanied by a present intent not to perform the promised act. The Court

finds that Plaintiff has the better of the argument on this point.

In order to sustain a claim of fraud under Michigan law, Plaintiff must establish:

(1) [t]hat [D]efendant made a material representation; (2) that it was false;
(3) that when [Defendant] made it [Defendant] knew that it was false, or
made it recklessly, without any knowledge of its truth, and as a positive
assertion; (4) that [Defendant] made it with the intention that it should be
acted upon by [P]laintiff; (5) that [P]laintiff acted in reliance upon it; and
(6) that [Plaintiff] thereby suffered injury.

Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 247 N.W.2d 813, 816

(1976) (internal quotation marks and citation omitted).[5]

In construing these elements, the Michigan courts have emphasized that "[f]uture

promises are contractual and do not constitute fraud," and that a claim of fraud instead

must generally "be predicated upon a statement relating to a past or an existing fact." Hi-

Way Motor Co., 247 N.W.2d at 816. Yet, there is a recognized "bad faith" exception to

this general rule, under which a claim of fraud "may be based upon a promise made in

bad faith without intention of performance." 247 N.W.2d at 816. In order to fit within

this exception, the evidence of a defendant's fraudulent intent "must relate to the conduct

of the actor at the very time of making the representations, or almost immediately

thereafter." 247 N.W.2d at 817 (internal quotation marks and citation omitted). The

Michigan courts also have recognized a related "false token" exception, which applies in

---

[5]For present purposes, at least, Defendant does not challenge the sufficiency of Plaintiff's
allegations as to these elements of its claim of fraud.

circumstances where there is "no proof of the promisor's intent," but where "the facts of the case" nonetheless "compel the inference that the promise was but a devise to perpetrate a fraud." 247 N.W.2d at 817; see also Diamond Computer Systems, Inc. v. SBC Communications, Inc., 424 F. Supp.2d 970, 981 (E.D. Mich. 2006).

Plaintiff's allegations fit sufficiently within these recognized exceptions to survive the present challenge. While Plaintiff does not explicitly allege that Defendant promised in bad faith to supply SHG zinc without any intention of doing so, it instead alleges (i) that Defendant represented that it had "sufficient resources" to supply the SHG zinc needed by Plaintiff to satisfy its obligation to its customer, and (ii) that this representation was "false, deceptive, and intentionally misleading when made," since Defendant did not, in fact, have the resources to meet Plaintiff's SHG zinc requirements. (Complaint at ¶ 21.) Through its allegations that Defendant's representations were "deceptive" and "intentionally misleading when made," Plaintiff's complaint would permit the inference, at least, that Defendant was aware at the time of its alleged promise that it lacked sufficient resources to provide the SHG zinc sought by Plaintiff, but that it nonetheless made a promise upon which it knew it could not deliver. These allegations of contemporaneous intent to mislead are sufficient to permit Plaintiff to go forward under the "false token" exception to the general rule against fraud claims resting upon promises of future action. See Diamond Computer Systems, 424 F. Supp.2d at 983 (finding that a fraud claim survived summary judgment where the evidence permitted the conclusion that the defendant lacked the intent to provide the promised service in light of the absence of

"infrastructure in place to furnish the service").

In apparent recognition of the sufficiency of Plaintiff's allegations on this point, Defendant advances a different challenge for the first time in its reply brief — namely, that Plaintiff has made only "conclusory allegation[s]" that "lack[] any evidentiary support." (Defendant's Reply Br. at 2.) Even assuming that this issue has been properly preserved for the Court's consideration, see United States v. Crozier, 259 F.3d 503, 517 (6th Cir. 2001) (observing that the court "will generally not hear issues raised for the first time in a reply brief"), such an evidentiary challenge to the complaint's allegations cannot form the basis for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, see Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 512 (6th Cir. 2001) (explaining that in resolving such a motion, a court must "accept all of the complaint's factual allegations as true"). Neither do the affidavits attached to Defendant's reply brief compel a different result, where the bare assertions in these affidavits that Defendant did, in fact, have sufficient resources to supply the quantities of SHG zinc needed by Plaintiff cannot be credited over Plaintiff's allegations to the contrary in the context of resolving a Rule 12(b)(6) motion, and where summary judgment on this issue plainly would be inappropriate absent an opportunity for Plaintiff to pursue discovery as to the matters addressed in these affidavits.

Finally, with regard to Defendant's protest that Plaintiff's allegations are too "conclusory" to satisfy the requirement that "the circumstances constituting fraud . . . shall be stated with particularity," Fed. R. Civ. P. 9(b), the Court finds that Plaintiff's

allegations as to Defendant's lack of "sufficient resources," while somewhat vague, are sufficient to apprise Defendant of the subject matter and nature of the purportedly false and deceptive representations that give rise to Plaintiff's fraud claim. Indeed, Defendant's sales manager and marketing director evidently were able to understand Plaintiff's references to "sufficient resources" well enough to address this subject in their affidavits that accompany Defendant's reply brief. Accordingly, the Court rejects Defendant's initial challenge to Plaintiff's claim of fraud.

**C.     Plaintiff's Fraud Claim Is Not Barred by the Economic Loss Doctrine.**

As the second of its two challenges to Plaintiff's claim of fraud, Defendant argues that this claim is barred by the "economic loss" doctrine. Plaintiff responds that this doctrine is not applicable here, on two grounds. First, Plaintiff observes that the economic loss doctrine bars a tort recovery only in circumstances where the parties' rights and obligations are set forth in an agreement governed by the Uniform Commercial Code ("UCC"). Plaintiff suggests that it would be premature to invoke this doctrine here, where Defendant has not yet answered the complaint, and where the possibility exists that Defendant will deny the existence of any contract that might trigger the application of the doctrine. In addition, Plaintiff contends that the economic loss doctrine reaches only tort claims arising from a *defective* product, as opposed to the outright *failure* to supply a product that Plaintiff alleges occurred here. The Court agrees with Plaintiff that its fraud claim is not barred by the economic loss doctrine, albeit for reasons somewhat different from those advanced by Plaintiff.

In <u>Neibarger v. Universal Cooperatives, Inc.</u>, 439 Mich. 512, 486 N.W.2d 612 (1992), the Michigan Supreme Court expressly adopted the economic loss doctrine. The court explained the doctrine as follows:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.' This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

<u>Neibarger</u>, 486 N.W.2d at 615 (internal quotation marks and footnotes with citations omitted). After discussing the reasoning behind the economic loss doctrine and surveying the decisions of other courts that had applied this doctrine, the <u>Neibarger</u> court held that "where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC." 486 N.W.2d at 618.

In this case, the parties are agreed that the transaction they discussed, the purchase of SHG zinc, would qualify as a sale of goods governed by the UCC. Nonetheless, Plaintiff suggests that the economic loss doctrine will not apply here, and thus will not operate to bar its claim of fraud, unless and until Defendant files an answer admitting that it entered into a contract with Plaintiff for the sale and purchase of SHG zinc. Absent such an acknowledgment, Plaintiff argues that an essential predicate to the economic loss

doctrine would be lacking — namely, an agreement governed by the UCC. Defendant

counters, however, that this prerequisite has already been supplied by Plaintiff itself,

through the allegations in its complaint, in support of its breach of contract claim, that the

parties did, in fact, enter into an agreement under which Defendant promised to provide

the quantities of SHG zinc needed by Plaintiff to meet the demands of its customer.

Both parties' arguments miss the mark. Defendant is correct that there is an

undeniable tension between Plaintiff's fraud and breach of contract claims. In particular,

if the evidence were to establish that the parties entered into a binding contract for the

sale and purchase of SHG zinc, then it seemingly would follow that Plaintiff would be

limited to the remedies provided under the UCC, rather than those allowed under

Michigan tort law. To be sure, the holding in Neibarger, and thus the applicability of the

economic loss doctrine, appears to be limited to efforts to recover "for economic loss

caused by a *defective* product," Neibarger, 486 N.W.2d at 618 (emphasis added), and

hence might not reach Plaintiff's claim here that Defendant altogether *failed to supply* a

product as called for in the parties' oral agreement.[6] Yet, apart from the economic loss

_____

[6]To the extent that Defendant contends that Neibarger should not be read as limited to
claims based on product defects, the Court notes that *all* of the cases cited in Defendant's brief in
support of its motion, including Neibarger itself, involved efforts to recover for losses due to
defective products. See Neibarger, 486 N.W.2d at 613-14 (addressing claims arising from
defects in cattle milking systems); Sherman v. Sea Ray Boats, Inc., 251 Mich. App. 41, 649
N.W.2d 783, 784 (2002) (involving allegedly defective wood that caused a boat to rot); MASB-
SEG Property/Casualty Pool, Inc. v. Metalux, 231 Mich. App. 393, 586 N.W.2d 549, 551 (1998)
(addressing allegations that a defective fluorescent light started a fire); Citizens Insurance Co. v.
Osmose Wood Preserving, Inc., 231 Mich. App. 40, 585 N.W.2d 314, 315 (1998) (involving the
use of allegedly defective flame-retardant chemicals that caused a roof to deteriorate and
collapse); Huron Tool & Engineering Co. v. Precision Consulting Services, Inc., 209 Mich. App.

doctrine and the specific context in which it applies, the Michigan courts have recognized

the more general principle that a mere failure to perform a contractual obligation cannot

support an action in tort, absent the "violation of a legal duty separate and distinct from

the contractual obligation." Rinaldo's Construction Corp. v. Michigan Bell Telephone

Co., 454 Mich. 65, 559 N.W.2d 647, 657-58 (1997); see also Sherman, 649 N.W.2d at

786-89; Convergent Group Corp. v. County of Kent, 266 F. Supp.2d 647, 660 (W.D.

Mich. 2003).  In this case, if one accepts Plaintiff's allegations (i) that Defendant offered

to supply sufficient SHG zinc to permit Plaintiff to meet the needs of its customer, and (ii)

that this offer ripened into a binding contract upon Plaintiff's acceptance, then it is

difficult to read Plaintiff's complaint as alleging the violation of any legal duty separate

and distinct from Defendant's purported obligation to provide SHG zinc in accordance

with the terms of its offer and Plaintiff's acceptance.

It does not follow, however, that Plaintiff's fraud claim is subject to dismissal at

the present juncture, whether under the economic loss doctrine or some broader tort

preclusion principle that applies when the parties' obligations are embodied in a contract.

Rather, as explained in one of the cases cited by Defendant, the courts have recognized

"an exception to the economic loss doctrine for a select group of intentional torts." Huron

Tool & Engineering, 532 N.W.2d at 544.  Of particular relevance here, the court held in

---

365, 532 N.W.2d 541, 543  (1995) (involving allegedly defective software that failed to perform
as warranted); Krupp PM Engineering, Inc. v. Honeywell, Inc., 209 Mich. App. 104, 530
N.W.2d 146, 148 (1995) (involving allegedly defective furnace components that caused harmful
temperature fluctuations at the plaintiff's manufacturing facility).

Huron Tool & Engineering that claims of "fraud in the inducement" lie outside the reach of the economic loss doctrine, because they "present[] a special situation where parties to a contract appear to negotiate freely — which normally would constitute grounds for invoking the economic loss doctrine — but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." 532 N.W.2d at 545. Because such circumstances defeat the rationale behind the economic loss doctrine — *i.e.,* that the parties to a commercial transaction are "in a position to negotiate the economic risks" entailed in their dealings, and thus should be bound by the risk assessments and allocations reflected in the contract that results from these negotiations — the Michigan Court of Appeals reasoned that the doctrine should not preclude a tort recovery "for fraud in the inducement extraneous to the alleged breach of contract." 532 N.W.2d at 545-46; see also Wright Tool Co. v. Chemchamp North America Corp., 185 F. Supp.2d 781, 784-85 (E.D. Mich. 2002) (recognizing this "fraud in the inducement" exception to the economic loss doctrine under Michigan law); Allmand Associates, Inc. v. Hercules Inc., 960 F. Supp. 1216, 1227-28 (E.D. Mich. 1997) (same).

The allegations in support of Plaintiff's fraud claim may fairly be read as supporting a claim of fraud in the inducement. As discussed earlier, Plaintiff alleges that Defendant made the intentionally misleading representation that it had sufficient resources to supply the quantities of SHG zinc needed by Plaintiff to meet its customer's demands, when in fact it lacked the resources to make good on this offer. Plaintiff further

14

alleges that Defendant was aware of Plaintiff's reliance on this assurance in submitting a price quotation to its customer and accepting the ensuing order from its customer. These allegations, if proven, would establish the perpetration of a fraud separate and apart from Defendant's alleged failure to fulfill a contractual obligation. Defendant's alleged misrepresentations would not merely have "concern[ed] the quality and characteristics of" the SHG zinc to be supplied by Defendant, Huron Tool & Engineering, 532 N.W.2d at 546, but rather would have produced the independent harm of inducing Plaintiff to enter into a contract with a party that knowingly and intentionally made a promise it could not keep. Accordingly, the Court finds that Plaintiff's allegations of fraud stand sufficiently apart from any alleged breach of a contractual obligation to surmount the bar of the economic loss doctrine, as well as the more general prohibition against tort claims based upon the failure to perform contractual duties.

It is of no moment, finally, that Plaintiff has explicitly asserted a breach of contract claim, and has alleged in support of this claim that the parties entered into a binding contract for the sale and purchase of SHG zinc. Under familiar rules of pleading, a plaintiff may pursue two or more theories of recovery in the alternative and "regardless of consistency." Fed. R. Civ. P. 8(e)(2). Thus, while Plaintiff cannot ultimately prevail on **both** its breach of contract and fraud claims, but must instead be content with, at best, a recovery under one theory or the other — with the attendant limitation to the remedies available under the successful theory — the Court rejects Defendant's contention that Plaintiff's fraud claim is defeated solely by virtue of the complaint's allegation that

Defendant breached a contractual obligation to provide SHG zinc in accordance with an agreed-upon pricing formula. Rather, the Court finds that Plaintiff's allegations are sufficient to permit this claim to go forward.

**D.     Plaintiff's Breach of Contract Claim Is Not Barred by the UCC's Statute of Frauds.**

Turning next to Plaintiff's breach of contract claim, Defendant contends that this claim is barred by the statute of frauds contained within Michigan's enactment of the UCC. The pertinent UCC provision states that, with certain exceptions, "a contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Mich. Comp. Laws § 440.2201(1). In this case, there is no question that the transaction at issue was for an amount far in excess of $1,000, and Plaintiff does not claim that the terms of this transaction were ever set forth in any writing signed by Defendant. Nonetheless, Plaintiff argues that the statutory requirement of a written agreement is overcome by principles of estoppel, where Defendant allegedly promised to provide such a writing but then failed to do so. (See Complaint at ¶¶ 15-16.) The Court agrees that Plaintiff's allegations trigger this theory of estoppel as recognized by the Michigan courts.

Plaintiff's appeal to estoppel in avoidance of the UCC's statute of frauds rests upon the decision of the Michigan Court of Appeals in <u>Fairway Machinery Sales Co. v.</u>

Continental Motors Corp., 40 Mich. App. 270, 198 N.W.2d 757 (1972).  In that case, the

defendant issued a written invitation to bid on used machinery that it wished to sell, and

the plaintiff submitted a written bid in response to this invitation.  The record, viewed

favorably to the plaintiff, established that the defendant orally accepted the plaintiff's bid,

and then assured the plaintiff that written confirmation of this acceptance was

forthcoming.  No such writing was provided, however, and the defendant instead sold the

machinery to a third party.  The plaintiff commenced a breach of contract suit, but the

trial court held that the plaintiff's claim was barred by the UCC's statute of frauds.

On appeal, the Michigan Court of Appeals first addressed the plaintiff's contention

that the defendant's written invitation to bid and the plaintiff's written bid in response to

this invitation satisfied the UCC's requirement of a writing.  The court rejected this

argument, reasoning that this statutory requirement could be satisfied only by a writing

signed by the defendant, and observing that "[t]here is nothing in this record to establish a

contract signed by defendant . . . as required by the statute."  Fairway Machinery Sales,

198 N.W.2d at 758.  The court then turned to the plaintiff's contention that the defendant

should be estopped from appealing to the statute of frauds by virtue of its promise to

confirm the parties' agreement in writing:

> In its answer, defendant pleaded affirmatively the statute of frauds.
> The burden of proving the defense was on defendant.  By way of reply to
> this defense, plaintiff alleged, "that its actions and expenditures in reliance
> upon [defendant's] acceptance removes the transaction between the parties
> from the shield of the statute of frauds."  In effect, plaintiff pleaded an
> estoppel which might prevent defendant from asserting the defense of [the]
> statute of frauds.

There were genuine issues as to the following material facts in relation to the alleged estoppel: did the statements of defendant through its agent constitute an acceptance of the bid and a promise to confirm this bid in writing, should defendant have reasonably expected reliance of the nature alleged by plaintiff, and did plaintiff detrimentally rely upon the representations of the defendant. Summary judgment was not proper.

198 N.W.2d at 758 (citations omitted). Accordingly, the court remanded the case for trial.

At first glance, this ruling certainly appears to support Plaintiff's effort to avoid the bar of the UCC's statute of frauds, where Plaintiff, like the plaintiff in <u>Fairway Machinery Sales</u>, allegedly was promised, but never provided with, written confirmation of Defendant's alleged agreement to supply SHG zinc to Plaintiff. Defendant insists, however, that <u>Fairway Machinery Sales</u> is factually dissimilar from this case, and hence inapplicable. In particular, while at least ***some*** writings were exchanged between the parties in <u>Fairway Machinery Sales</u> that could serve to corroborate their agreement, Plaintiff in this case does not allege that there are any written indicia whatsoever of Defendant's agreement to supply SHG zinc to Plaintiff.

This lack of any written evidence of an agreement is all the more significant, in Defendant's view, in light of a UCC provision that would have permitted Plaintiff to overcome any statute of frauds concerns by generating and transmitting a confirmation of its own accord. Specifically, this provision states:

Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) [*i.e.,* the UCC statute of frauds] against the

> party unless written notice of objection to its contents is given within 10
> days after it is received.

Mich. Comp. Laws § 440.2201(2).  Given this statutory avenue of self-help in the absence

of written confirmation from the other contracting party, Defendant argues that the

absence of any writing should be fatal to Plaintiff's breach of contract claim here.

Defendant has not suggested any basis, however, for this Court to impose

additional requirements that the court did not insist upon in Fairway Machinery Sales.

First, while some writings had been exchanged by the parties in that case, the court did

not rely upon this fact in any way in ruling that the plaintiff should be permitted to go

forward on its appeal to principles of estoppel.  To the contrary, the court seemingly

dismissed these writings as irrelevant, upon concluding that they could not satisfy the

statutory requirement of a writing signed by the defendant.  Similarly, the court did not

consider whether the written bid submitted by the plaintiff might have satisfied the self-

help provision at § 440.2201(2), and nothing in Fairway Machinery Sales suggests that a

party's attempt, or lack thereof, to invoke this self-help mechanism has any bearing on the

party's ability to overcome a statute of frauds defense by advancing a theory of estoppel.

The parties do not indicate, and the Court's own research likewise has failed to

disclose, that the Michigan Supreme Court has addressed the availability of principles of

estoppel to overcome a defendant's appeal to the UCC's statute of frauds.  Rather, it

appears that the decision in Fairway Machinery Sales is the first and only word on the

subject by a Michigan court.  Although this ruling by the Michigan Court of Appeals

"lack[s] . . . the controlling force of a decision of a state court of last resort," it nonetheless "serve[s] as a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Ziebart International Corp. v. CNA Insurance Cos., 78 F.3d 245, 250-51 (6th Cir. 1996) (internal quotation marks and citations omitted). Apart from citing factual distinctions that seemingly played no part in the Michigan court's ruling, Defendant has not identified any basis for this Court to decline to follow Fairway Machinery Sales, or to add elements to a theory of estoppel beyond those delineated in that decision. Consequently, the Court finds that Plaintiff's allegations suffice under Michigan law to overcome the absence of a writing as ordinarily required under Michigan's enactment of the UCC statute of frauds.

**E.      Plaintiff Cannot Pursue a Separate Claim Based on Defendant's Alleged Breach of an Implied Covenant of Good Faith and Fair Dealing.**

In the third and final count of its complaint, Plaintiff alleges that Defendant breached an implied covenant of good faith and fair dealing that exists in all contracts governed by Michigan law.  Through the present motion, Defendant seeks the dismissal of this claim on the ground that Michigan law does not recognize a separate cause of action for breach of this implied covenant.  The Court agrees.

Every contract within the purview of Michigan's enactment of the UCC "imposes an obligation of good faith in its performance or enforcement."  Mich. Comp. Laws § 440.1203.  Outside the context of the UCC, the Michigan courts have explained that "the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  <u>Hammond v. United of Oakland, Inc.</u>, 193 Mich. App. 146, 483 N.W.2d 652, 655 (1992) (internal quotation marks and citations omitted).

Yet, it is quite clear, whether under the UCC or under more general principles of Michigan contract law, that there is no independent cause of action for breach of this implied covenant.  As stated in the commentary accompanying the above-cited UCC provision:

> This section does not support an independent cause of action for failure to perform or enforce in good faith.  Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under

21

the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

UCC § 1-203 official cmt.;see also Pidcock v. Ewing, 371 F. Supp.2d 870, 880 (E.D. Mich. 2005) (quoting this commentary in dismissing an independent claim for breach of the UCC's implied covenant of good faith performance). Again, the Michigan courts have reached the same conclusion under the state's general contract law, see, e.g., Belle Isle Grill Corp. v. City of Detroit, 256 Mich. App. 463, 666 N.W.2d 271, 279 (2003) ("Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."), and Plaintiff concedes this point in its response to Defendant's motion, (see Plaintiff's Response at 12).

At most, then, Plaintiff's appeal to this implied covenant could lend further support to the breach of contract claim asserted in count two of the complaint. See General Motors Corp. v. Department of Treasury, 466 Mich. 231, 644 N.W.2d 734, 738-39 (2002); Ferrell v. Vic Tanny International, Inc., 137 Mich. App. 238, 357 N.W.2d 669, 672-73 (1984). Yet, Plaintiff has not sought leave to amend this count to incorporate allegations of Defendant's lack of good faith performance of its contractual obligations. And, indeed, it is not clear what purpose such allegations could serve here. Surely, the outright *failure* to perform a contractual obligation, as Plaintiff alleges occurred here, obviates the need to consider whether such non-performance was the product of good faith. Nothing in Plaintiff's complaint suggests that Defendant unreasonably performed a

task that was left to its discretion, such that it could be said to have lacked good faith in this performance. Rather, the alleged breach here was much more clear-cut, with no need for interpretation of the precise nature and scope of a party's contractual obligations. Consequently, the Court finds that Plaintiff's claim of a breach of an implied covenant of good faith and fair dealing must be dismissed for failure to state a claim.

### IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order. Specifically, the claim set forth in count three of Plaintiff's complaint is dismissed, but Plaintiff may go forward with its remaining claims.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  September 25, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 25, 2007, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager